

# United States Bankruptcy Court
# for the District of Oregon

**Albert E. Radcliffe, Judge**
Virginia H. Denney, Judicial Assistant
Howard J. Newman, Law Clerk

405 East Eighth Avenue, Suite 2600
Eugene, Oregon 97401

(541) 431-4050
FAX: (541) 431-4047

February 29, 2008

Ms Martha Takaro
222 S. .W. Columbia Street. #1600
Portland, OR 97201-6616

Mr. David B. Mills
Hammons & Mills
115 West 8th Avenue, #280
Eugene, OR 97401

RE:   MERRITT, David & Marjorie; Case No. 06-61639-aer7
      Ms Takaro's Motion to Recognize Standing

Counsel:

This letter will announce findings of fact and conclusions of law on the above-referenced motion.

### Factual and Procedural Background

The parties' submissions indicate the following:

In January, 2006, David Wesley Merritt (Debtor) filed a "Complaint for Unlawful Practice" with the Civil Rights Division of the Oregon Bureau of Labor and Industries (BOLI) against IFA Nurseries, Inc. (IFA), alleging unlawful discrimination under the Oregon Family Leave Act (OFLA) (**the wrongful discharge claim**).

Debtor, along with his spouse filed a Chapter 7 petition, pro se, on August 22, 2006. Mr. Sticka was appointed trustee. Debtors didn't list the wrongful discharge claim on their schedules.

On or about September 8, 2006, BOLI dismissed the wrongful discharge claim by letter. The letter alerted Debtor, that under Oregon law, he had 90 days to file a civil suit in state circuit court or else such right would be lost. On September 11, 2006, Debtor amended Schedule B to disclose the wrongful discharge claim, valued at "unknown."

On December 5, 2006, Debtor retained Ms Takaro to represent him in prosecuting the wrongful discharge claim. He entered into a contingent fee agreement "for the purpose of

recovering damages against Stearns[1] and IFA." Fees were to be the greater of any fee recovery against IFA or Stearns, 33.33% of the recovery if the claim was settled before trial or arbitration, or 40% of any recovery during or after trial.

On December 6, 2006, Ms Takaro, in essence, re-filed the wrongful discharge claim (only in a more comprehensive form) in Clackamas County Circuit Court on Debtor's behalf, naming both IFA and Stearns as defendants. The complaint included multiple causes of action including those for OFLA violations, disability discrimination, and wrongful discharge. Debtor prayed for, among other things, reinstatement, front and back pay, and $250,000 in compensatory damages.[2]

On December 12, 2006, Ms Takaro informed Mr. Sticka, by letter, of the filing of the wrongful discharge claim. She advised she was under a time crunch because the 90 days per the BOLI letter was about to run.[3] She claimed much of the damages would be exempt as future wages. She asked if there were any estate assets to fund prosecution and whether there were any other attorneys willing to pursue the matter. She also inquired if Mr. Sticka was willing to abandon the wrongful discharge claim.

On December 20, 2006, Mr. Sticka wrote back advising Debtor lacked standing to pursue the claim. He asked Ms Takaro whether she wanted to be the estate's counsel, outlining that conflict waivers may be needed.

On January 3, 2007, Ms Takaro replied by letter, declining the offer of employment on the estates behalf. She advised she represented Debtor solely. Ms Takaro noted she would be trying to maximize the portion of damages she believed was exempt, and that she would be happy to work with an attorney representing the estate who would be attempting to recover a judgment for pain and suffering, which would belong to the bankruptcy estate.

On January 25, 2007, Ms Takaro sent Mr. Sticka copies of requests for production and IFA/Stearns' Rule 21 motions. She asked to be advised when Mr. Sticka would make a decision regarding the case.

On February 9, 2007, Mr. Sticka wrote IFA's counsel advising there was an issue as to what claims the estate owned. He recommended abatement until everything was sorted out. A copy of the letter was sent to Ms Takaro.

---

[1] David Stearns is allegedly IFA's President.

[2] Upon filing of Debtor's Chapter 7 petition, the wrongful discharge claim became estate property. 11 U.S.C. § 541(a)(1). [Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code]. Technically, Debtor's filing of the wrongful discharge claim in Clackamas County Circuit Court violated the automatic stay, as an action to obtain possession or exercise control over estate property. 11 U.S.C. § 362(a)(3). Acts in violation of the stay are void. Schwartz v. U.S. (In re Schwartz), 954 F.2d 569 (9th Cir. 1992). No party in interest has filed a motion to annul the stay to validate the filing. In fact, the Clackamas County suit was dismissed in January, 2008, although Mr. Sticka has represented that the dismissal was without prejudice.

[3] Although no "timeliness" issue is before me at this time, it is highly probable Ms Takaro's impression was mistaken. It appears that at the least, under § 108(a), Mr. Sticka had until the later of the limitations period or 2 years from the order for relief to file the wrongful discharge claim.

On March 19, 2007, Ms Takaro wrote Mr. Sticka advising him an amended complaint had been filed and providing him with a copy. She also advised she would be drafting a motion to compel discovery. Finally, she asked if he had made a decision regarding the case, as Debtor remained unemployed and was anxious to know if the estate would help fund the case.

On April 10, 2007, Mr. Sticka filed an application to employ Matthew Duckworth of the firm of Busse and Hunt as counsel for "[r]epresentation of bankruptcy trustee in Merritt v. David Stearns & IFA Nurseries, Inc., Clackamas County Case No. CV-06-12-136" under a contingency fee agreement providing for 25% if recovery was before suit was filed, 33% if recovery was after suit was filed and 40% if recovery was after appeal. The application went out on self-executing order giving parties 22 days to object. No one objected, and the employment was approved.

On April 26, 2007, Ms Takaro wrote Mr. Duckworth confirming receipt of an e-mail from Mr. Duckworth indicating he was working on a medical privilege issue in the case. Ms Takaro also enclosed notices of trial and settlement conference dates and asked if the estate would be willing to pay a pending $193 trial fee.

On July 25, 2007, Debtor filed amended Schedules B and C, listing the wrongful discharge claim in various components.[4] On August 6, 2007, Ms Takaro filed a motion to set aside the order allowing Mr. Duckworth's employment. On August 8, 2007, Mr. Sticka filed an objection to the exemptions.

On September 6, 2007, I conducted a hearing on the motion to set aside the employment order. The motion was denied. On October 5, 2007, the Order resulting from the hearing was entered. It made explicit findings that: 1) the claim, including the loss of future earnings, was an estate asset unless or until abandoned or otherwise disposed of by Mr. Sticka; 2) it was premature to determine the amount of Debtor's exemption; and 3) Mr. Sticka was the only party in interest who had authority to prosecute the claim. The Order held in abeyance the pending objection to exemptions until the matter was ripe.

On November 7, 2007, Mr. Sticka filed a motion/notice of intent to settle the wrongful discharge claim for $60,000 cash. The notice indicated Mr. Sticka's position that Mr. Duckworth was entitled to one third of the settlement amount.

On November 29, 2007, Debtor (through Ms Takaro and Ms Manishan) filed a motion to extend the time to object to the settlement. On the same day, Debtor filed a timely pro se objection,

---

[4] The Amended Schedules valued and exempted the wrongful discharge claim as follows:

1) $46,600 in wage and wage equivalents to date of bankruptcy-claimed 75% exempt under ORS 18.385;
2) $56,000 in future wages and wage equivalents due from the date of the petition until the date of Amended Schedule C (August 22, 2006-July 25, 2007), claimed 100% exempt under ORS 18.345(1)(L) and noted as "not property of the estate";
3) $400,000 in future earnings claimed 100% exempt under ORS 18.345(1)(L), and noted as "not property of the estate;"
4) $0 in emotional distress damages (pre and post petition portions) as component of the wrongful discharge claim; noted Debtor will stipulate to amending his complaint to remove the emotional distress component; claimed $322 exempt under ORS 18.345(1)(o).

Ms Takaro & Mr. Mills
February 29, 2008
Page-4

Ms Takaro & Mr. Mills
February 29, 2008
Page-4

arguing that: 1) the $60,000 was insufficient; 2) most of the settlement amount was lost future earnings that would be exempt; and 3) $15,000[5] in attorney's fees was excessive considering that Ms Takaro did most of the work.

On January 8, 2008, I held a status conference. The motion to extend had been mooted by Debtor's timely pro se objection. At the hearing, the parties acknowledged that in considering the merits of the proposed settlement, the validity of Debtor's exemptions, the reasonableness of Mr. Duckworth's fees, and the overall merits of the wrongful discharge claim would need to be considered. I advised Debtor's objection to the settlement would be set for an evidentiary hearing. Based on Ms Takaro's continuing representations that she did not represent Debtor in the bankruptcy case, I, as well as Mr. Sticka, questioned Ms Takaro's standing to be heard. A minute order was entered imposing scheduling deadlines as to Debtor's objection to the settlement. Ms Takaro was given until January 23, 2008 to file a brief in support of her standing to appear further in the case. Mr. Sticka had until February 6, 2008 to respond. I reserved the right to rule on the record.

On January 24, 2008, Ms Takaro tendered her motion regarding standing in paper form. The court rejected it by order that same day because it had not been filed electronically, and because it was tardy. Chief Bankruptcy Judge Perris has since given permission for Ms Takaro to file paper documents.

On February 4, 2008, Ms Takaro and Debtor, pro se, filed separate motions asking for a hearing on Ms Takaro's request to file her motion regarding standing. That same day Ms Takaro re-filed her motion as to standing. On February 6, 2008, Mr. Sticka filed his objection thereto. The matter is now ripe for decision.

The evidentiary hearing on Debtor's objection to the proposed settlement has been set for May 7 and 8, 2008.

Discussion

Timeliness:

Fairness requires that Chief Judge Perris' ruling be given retroactive effect. Thus Ms Takaro's paper submission on January 24, 2008 was one day late. Mr. Sticka notes the tardiness but does not strenuously argue for striking Ms Takaro's motion. I will apply Pioneer's excusable neglect standard in resolving the timeliness issue.[6] Even though Ms Takaro offers no explanation for her tardiness, I find, weighing the appropriate factors, that the one day delay caused no prejudice and that I will therefore consider the motion as timely.

---

[5] Debtor's implied argument is that Mr. Duckworth's fees are capped at 25%.

[6] FRBP 9006(b)(1) allows an extension of time based on "excusable neglect." Under Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498, 123 L. Ed. 2d 74 (1993), I am to consider: 1) the danger of prejudice to the opposing party; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant, and 4) whether the movant acted in good faith. I am at liberty to weigh the factors. Pincay v. Andrews, 389 F.3d 853, 860 (9th Cir. 2004), cert. den., 544 U.S. 961, 125 S.Ct. 1726, 161 L.Ed.2d 602 (2005).

Merits

Custodian:

Ms Takaro argues that she has standing as an administrative claimant under § 503(b)(3)(E) as a superseded custodian of the wrongful discharge claim entitled to compensation under § 543(c)(2). Section 101(11) defines "custodian" and provides:

The term "custodian" means--

>   **(A)** receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
>   **(B)** assignee under a general assignment for the benefit of the debtor's creditors; or
>   **(C)** trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

I agree with Mr. Sticka that Ms Takaro does not fit the statutory definition of "custodian."

Contingent Interest in Debtor's Exemptions:

Ms Takaro argues that she has standing by virtue of being a third party beneficiary of Debtor's exemption claims. I disagree. Ms Takaro has not proffered any fee arrangement which would pay her a percentage of Debtor's exemption recovery. Debtor's entitlement to exemptions will take place in this court and Ms Takaro has, to this point expressly disavowed representing Debtor here. Instead, Ms Takaro's proffered fee agreement allows a contingent fee or a fee based on fee shifting, whichever is greater, for representing Debtor in prosecuting the underlying wrongful discharge claim in Clackamas County Circuit Court. Her theory was that Debtor's exemption claims could be pursued in that forum alongside Mr. Sticka who would separately prosecute the pain and suffering elements. I rejected that theory in my October 5, 2007 Order, finding Mr. Sticka was the only one with standing to litigate the underlying wrongful discharge claim. See, In re Rice, 224 B.R. 464, 467-468 (Bankr. D. Or. 1998) (debtor's pre-petition personal injury claims were estate property and his future earning exemption extended only to the "right to payment in a certain amount from any proceeds generated from that claim.").

Interested Party:

Ms Takaro argues she has standing as an "interested party" by negative implication as she is not a "disinterested person" because she has an interest adverse to the estate by virtue of representing Debtor in the wrongful discharge claim. I reject this argument. As stated above, Debtor had and has no standing to prosecute the wrongful discharge claim. Ms Takaro cannot claim standing by virtue of representing a party who himself has no standing.

Quantum Meruit:

Ms Takaro argues she is entitled to an administrative claim based on *quantum meruit*, setting out the state law elements. Mr. Sticka attacks element #4 requiring that the claimant have a

Ms Takaro & Mr. Mills
February 29, 2008
Page-6


reasonable expectation of compensation at the time the services were rendered. He argues Ms Takaro had no such reasonable expectation because he had made it clear in his December 20, 2006 letter that to get paid she would need to be employed and have her fees approved by the court.

Both parties neglect that the *sine qua non* to compensation from a Chapter 7 estate of an attorney in Ms Takaro's shoes is court approval of the attorney's employment. Lamie v. UST, 540 U.S. 526, 124 S. Ct.1023, 157 L. Ed. 2d 1024 (2004). *Quantum meruit* cannot itself provide the basis for recovery. McCutcheon, Doyle v. Official Committee of Unsecured Creditors (In re Weibel, Inc.), 176 BR 209, 212 (9th Cir. B.A.P. 1992); see also, Hill v. Comacho, 2007 WL 2120891 (D. Or. 2007) (recognizing that state law theories of compensation must give way to the Bankruptcy Code). Ms Takaro has declined employment for the estate which is a prerequisite to court approval.

Conclusion:

Based on the above, Ms Takaro has no standing to appear further in the case.[7] An appropriate order will be entered. The above constitutes my findings of fact and conclusions of law under FRBP 7052; they shall not be separately stated.

        Very truly yours,

        *albert E. Radcliffe*

        ALBERT E. RADCLIFFE
        Bankruptcy Judge

AER:vhd

cc:    Ms Gail Geiger, Assist. U. S. Trustee

---

[7] Ms Takaro has repeatedly advised this court that she is not a bankruptcy attorney and is not qualified to represent Debtor in these proceedings. She is however an experienced employment attorney. It appears that many of the issues to be taken up at the May 7, 2008 evidentiary hearing concern employment related topics, such as the wrongful discharge claim's underlying merits and Debtor's entitlement to future earnings to support his exemption claim. As long as a limited engagement was fully disclosed, and agreed to by the debtor, there would appear no reason why Debtor could not employ Ms Takaro for the limited purpose of objecting to Mr. Sticka's proposed settlement and litigating the exemption issues.